IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 2:08-cr-01155-DCN-8 |
| | ) | |
| ANTHONY STERLING MILLER, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
|                                           | ) | |

This matter is before the court on defendant Anthony Sterling Miller's ("Miller") motion for compassionate release, ECF No. 1167. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

In January 2006, the Drug Enforcement Administration ("DEA") began an investigation into a large-scale Mexican drug trafficking and money laundering organizations with cell heads located across the United States. ECF No. 973, Presentence Investigation Report ("PSR") ¶ 14. One cell head was in Charleston, South Carolina, where cocaine was to be held pending delivery to New York for street distribution. Id. The DEA identified Gregorio Maldonado ("Maldonado") as the leader of the operation, coordinating the movement of cocaine from Tucson, Arizona, and El Paso, Texas, to Charleston, South Carolina, and New York through the use and transport of cars with hidden, after-market traps. Id. ¶¶ 14–22. Maldonado then distributed the cocaine to individuals in the Charleston area, including Miller. Id.

The grand jury charged Miller, along with seven others, in a three-count indictment on November 12, 2008. ECF No. 30. On March 11, 2009, the grand jury returned a superseding indictment which charged three counts against Miller and

1

seventeen others. ECF No. 199. The grand jury named Miller in Counts 1 and 2. Id. Count 1 charges Miller and seventeen other defendants with conspiring to possess with intent to distribute and distribution of five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Id. Count 2 charges Miller and seventeen other defendants with conspiring to conduct financial transactions with the proceeds of unlawful activities in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(g); and 1957. Id. On March 23, 2010, Miller pleaded guilty to Counts 1 and 2 of the Superseding Indictment after arraignment in open court. ECF Nos. 537; 538. On May 15, 2011, Miller filed a motion to withdraw his guilty plea, ECF No. 801, which the court denied on November 15, 2011, ECF No. 845.

On November 29, 2012, the court held Miller's sentencing hearing. ECF No. 972. On December 3, 2012, the court issued its judgment and statement of reasons and sentenced Miller under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") with an enhancement pursuant to 21 U.S.C. § 851 to an imprisonment term of 262 months as to Count 1 and 240 months as to Count 2 to run concurrently, followed by ten years of supervised release. ECF No. 976. The prior serious drug felony conviction relied upon for his sentencing enhancement was a 1995 New York conviction for possession of a controlled substance in the second degree. PSR ¶ 29.

On December 6, 2012, Miller timely appealed his conviction on the grounds that the court did not allow him to retract his guilty plea. ECF No. 979. On June 10, 2013, the Fourth Circuit affirmed Miller's conviction. ECF Nos. 1012; 1016. On November 6, 2015, Miller filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c) and the amended guidelines range issued by the United States Sentencing Commission

effective November 1, 2014. ECF No. 1078. The court granted the motion on January 25, 2017, reducing Miller's sentence to 240 months on Count 1 and 210 months on Count 2, to run concurrently. ECF No. 1079.

On August 12, 2021, Miller filed a pro se motion for compassionate release.[1] ECF No. 1167. On July 13, 2022, the United States of America (the "government") filed a response in opposition to Miller's motion for compassionate release, ECF No. 1179, to which Miller replied on October 18, 2022, ECF No. 1183. As such, this motion has been fully briefed and is ripe for review.

## II. STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule where "extraordinary and compelling reasons warrant such a reduction." Courts refer to requests under this section as motions for "compassionate release." United States v. Norris, 458 F. Supp. 3d 383, 385 (E.D.N.C. 2020). Prior to the First Step Act, Pub. L. No 115-391, 132 Stat. 5194 (2018), the law permitted only the Bureau of Prisons (the "BOP") to file motions for compassionate release. United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate release with the sentencing court after exhausting all available administrative remedies. United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020).

---

[1] On April 11, 2022, the court issued an order appointing a federal public defender to represent Miller on his motion for compassionate release. ECF No. 1171.

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Fourth Circuit recently clarified that district courts are empowered to "consider any extraordinary and compelling reason for release that defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)). If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must "consider the factors set forth in [18 U.S.C.] § 3553(a)" to determine whether such a reduction is justified. 18 U.S.C. § 3582(c)(1)(A)(i). A defendant seeking compassionate release "has the burden of establishing that such relief is warranted." Griggs, 462 F. Supp. 3d at 615. Even after the changes to § 3582(c)(1)(A)(i) promulgated under the First Step Act, the burden remains "exceptionally high." McCoy, 981 F.3d at 288.

### III. DISCUSSION

Miller moves for his compassionate release due to the sentencing disparity that he claims exists between his sentence and his hypothetical sentence should he be sentenced today. The court first considers, as it must, whether Miller has exhausted all administrative remedies or otherwise met the threshold requirement of § 3582(c)(1)(A). The court then addresses the substance of Miller's motion, first with an examination of the reasons that Miller claims meet the extraordinary and compelling threshold. Finally, the court examines the § 3553(a) factors to consider whether they warrant a reduction in Miller's sentence, ultimately finding that they do.

### A. Administrative Exhaustion

As a prerequisite to a motion for compassionate relief, a defendant must exhaust his available administrative remedies. Section 3582(c)(1)(A)(i) provides that a defendant does so when: (1) the "defendant has fully exhausted his administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) the defendant requested compassionate relief from the warden of his facility and thirty days from the warden's receipt of the request has lapsed without response, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).

Miller submitted a request for compassionate release to the warden of his BOP facility at the time, Federal Correctional Institute Fairton ("FCI Fairton"), on April 4, 2020. ECF No. 1179 at 4, 12. He submitted another request on August 4, 2020. Id. The government does not dispute that Miller has satisfied his administrative exhaustion requirement. ECF No. 1179 at 4. The court likewise finds that Miller has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

Miller argues for his compassionate release on the basis that his statutory penalties at sentencing would not be the same should he be sentenced today. ECF No. 1183 at 2, 7. On August 5, 2020, the BOP transferred Miller to home confinement because of the COVID-19 pandemic, as well as Miller's "excellent behavior in prison," after making a finding that he was not a danger to the community. Id. at 4; ECF No. 1167 at 3; ECF No. 1183 at 1. Since then, Miller has remained in either a residential reentry center ("RRC") or home confinement overseen by the BOP. See id.

Following the enactment of the First Step Act of 2018, section 851 enhancement can only apply under 21 U.S.C. § 841(b)(1)(A) if the prior conviction is a serious drug offense.[2] Miller contends that if sentenced today the § 851 enhancement would not apply to Count 1 because it was based on his 1995 New York conviction for possession of a controlled substance in the second degree. See ECF No. 1183 at 3. Because Miller was convicted of simple possession and not of the manufacture, distribution, or possession with intent to manufacture or distribute, his prior conviction does not satisfy the requirement for an offense under state law to be classified as a serious drug offense. Additionally, Miller only served 114 days in a boot camp program for that offense. PSR ¶ 29. Consequently, were Miller sentenced today, the mandatory minimum sentence would be ten years. Ten years is significantly less than the twenty-year minimum in effect at the time of Miller's resentencing for which he was sentenced. ECF No. 1183 at 2.

However, though the mandatory minimum sentence has changed, the guideline range has not. At Miller's first sentencing, his total offense level was calculated to be 38

---

[2] Section 401 of the First Step Act redefined the predicate offenses that trigger a sentence enhancement under § 851 by requiring that a predicate drug conviction be for a "serious drug felony." First Step Act § 401(a)(2), 132 Stat. at 5194; 21 U.S.C. § 841(b)(1)(A). In pertinent part:

> The term "serious drug felony" means an offense described in section 924(e)(2) of Title 18 for which—
>
> > (A) the offender served a term of imprisonment of more than 12 months; and
> >
> > (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

21 U.S.C. § 802(57).

with a criminal history category of II.  ECF No. 977.  On November 10, 2015, the court reduced Miller's sentence to 240 months pursuant to 18 U.S.C. § 3582(c) and the retroactive amended guideline range issued by the United States Sentencing Commission effective November 1, 2014.  ECF No. 1079.  In so doing, the court reduced Miller's offense level from 38 to 36, which yielded a new guideline range of 210–262 months.  See ECF No. 1078.  Miller does not argue that he should be subject to a new offense level, only that the mandatory minimum of a 240-month sentence would no longer apply.  See ECF No. 1167 at 7.  While district courts are "not bound to apply the Guidelines, [they] must consult those Guidelines and take them into account when sentencing."  See United States v. Booker, 543 U.S. 220, 264 (2005).  The Guideline range for an offense level of 36 and a criminal history category of II remains the same: 210–262 months.  See U.S. Sent'g Guidelines Manual § 5A (U.S. Sent'g Comm'n 2021).  Importantly, Miller's reduced 240-month sentence falls within the applicable Guideline range.  However, should Miller be sentenced today, his sentence would likely fall at the bottom of the Guideline range, or 210 months.  This is because the 240-month mandatory minimum sentence would no longer apply to Count 1, and the court has generally sentenced him to the lower end of the applicable sentencing range, including for Count 2.  This constitutes a sentencing disparity of thirty months, or two and a half years.

      Sentencing disparities can be considered an extraordinary and compelling reason in certain circumstances.  In McCoy, the Fourth Circuit held that the defendants in that case were entitled to compassionate release based on "the severity of [their] § 924(c) sentences and the extent of the disparity between [their] sentences and those provided for under the First Step Act," which modified the mandatory minimum that applied for the

7

defendants' § 924(c) convictions. 981 F.3d at 286. Since Miller was sentenced at a time when the requirements for an § 851 enhancement were lesser, his mandatory minimum was ten years longer than the mandatory minimum he would receive today for the same crime. While Congress did not make the First Step Act categorically retroactive, courts can certainly consider its impact when reviewing compassionate release motions. McCoy, 981 F.3d at 286. Indeed, "[t]here is as of now no 'applicable' policy statement governing compassionate release motions filed by defendants." Id. at 284. Thus, "the court is authorized in compassionate release cases, pursuant to McCoy, to examine the sentence a defendant would receive today compared with the sentence actually imposed at the time of conviction." United States v. Bullock, 2023 WL 3344416, at *5 (D.S.C. May 10, 2023). Courts in this circuit have found differences of even one to two years to be a gross disparity sufficient to establish an extraordinary and compelling reason for compassionate release. See, e.g., United States v. Shaw, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021) (22-month sentencing disparity); United States v. Williams, 2021 WL 5827327, at *6 (E.D. Va. Dec. 8, 2021) (43-month sentencing disparity). Moreover, this court and other courts within this circuit have applied the McCoy reasoning when considering motions for compassionate release based on the claim that a defendant would no longer be subject to a longer sentence based on a § 851 enhancement. See, e.g., United States v. Johnson, 2021 WL 2379474, at *4 (D.S.C. June 10, 2021); United States v. Edwards, 2022 WL 1557045, at *4 (W.D. Va. May 17, 2022); United States v. Gamboa, 2022 WL 275528, at *4 (S.D.W. Va. Jan. 28, 2022).

      Because Miller's 1995 conviction is no longer classified as a serious drug offense, a similarly situated defendant sentenced today for the same crime would likely be

sentenced to 210 months—a term of imprisonment at the bottom of the applicable guideline range—which is thirty months shorter than the sentence Miller received. Given the thirty-month sentencing disparity, the court finds that Miller has shown extraordinary and compelling reasons such that the court may grant his compassionate release.

### C. Section 3553 Factors

Concluding that Miller had demonstrated that his circumstances are extraordinary and compelling, the court next considers the factors set forth in in 18 U.S.C. § 3553(a). In sentencing a defendant or determining whether a reduction is justified, § 3553(a) requires a court "impose a sentence sufficient, but not greater than necessary" by considering the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (B) to afford adequate deterrence to criminal conduct;
>  (C) to protect the public from further crimes of the defendant; and
>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense committed];
>  [. . .]
> (5) any pertinent policy statement
>  [. . .]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The nature and circumstances of the alleged offense were serious. Miller was a participant in a drug trafficking organization that brought large amounts of cocaine to the

Charleston area. However, the court finds that § 3553(a)(4) and (a)(6) weigh in favor of granting Miller's motion for compassionate release. Miller has been in custody for this crime since September 2010, which comes to 154 months or almost thirteen years. Additionally, Miller's only prior felony is his 1995 New York conviction for possession of a controlled substance in the second degree. Because that conviction is no longer classified as a serious drug offense, a similarly situated defendant sentenced today for the same crime would likely be sentenced to a term of imprisonment at the bottom of the guidelines range—210 months—which is thirty months shorter than the sentence Miller received. This is a significant sentencing disparity that weighs in favor of Miller's compassionate release or a reduction in his sentence. See 18 U.S.C. § 3553(6).

  The court acknowledges Miller's efforts at rehabilitation during his incarceration, namely his consistent employment and completion of over 5000 hours of educational or self-improvement courses. ECF No. 1167 at 8. He also developed a nine-month RDAP program to help prepare for his release from prison, and he desires "to implement this program on the streets to help people who were recently released from prison." Id. at 9. Additionally, since Miller's placement in home confinement, he has maintained a full-time job as a machine operator at Nexans High Voltage USA. ECF No. 1184 at 4. He is also "working hard to build a relationship with his son, who was born just before he was sentenced to prison." ECF No. 1167 at 9. Finally, Miller urges the court to consider that he has been released to home confinement for the past three years and during that time he has demonstrated that he is rehabilitated and not a danger to the community. ECF No. 1183 at 4–5. These efforts are commendable, and alongside the sentencing disparity, weigh in favor of a sentence reduction. See United States v. Henriquez, 2021 WL

10

5771543 at *2 (M.D.N.C. Dec. 6, 2021) (finding that the defendant's "model behavior in prison, his unusually deep efforts at successful rehabilitation, his work ethic, and the support of a significant number of BOP employees with personal knowledge of his family circumstances" favored a sentence reduction).

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Miller's motion for compassionate release.  The previously imposed sentence is reduced to a total term of time served.

Upon release from imprisonment, Miller shall be placed on supervised release for a total term of five (5) years; said term consists of five (5) years as to Count 1 and three (3) years as to Count 2, to run concurrently.  While on supervised release, Miller shall comply with the mandatory and standard conditions of supervision outlined in 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(c) (attached herein).  Standard conditions of supervision 1 through 9 and 13 serve the statutory sentencing purposes of public protection and rehabilitation pursuant to 18 U.S.C. § 3553(a)(2)(C) and (D).  Standard conditions of supervision 10 and 12 serve the statutory sentencing purpose of public protection pursuant to 18 U.S.C. § 3553(a)(2)(C).  Standard condition of supervision 11 ensures that Miller does not engage in activities that may potentially conflict with the other conditions of supervision and that may pose risks to Miller's probation officer.  All financial obligations previously imposed remain in effect.  Additionally, the following special conditions apply:

**Special Conditions**:

1. Miller shall participate in a program of testing for substance abuse as approved by the U.S. Probation Officer. This condition serves the sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C)–(D).

2. Miller shall contribute to the costs of any treatment, drug testing, and/or location monitoring, not to exceed the amount determined reasonable by the court-approved U.S. Probation Office's Sliding Scale for Services, and shall cooperate in securing any applicable third-party payment, such as insurance or Medicaid. This condition serves the purpose of Miller having some personal stake in the programs in which he is participating and to afford greater opportunities for others on supervised release to receive the benefits of such programs.

3. Miller shall be screened for the REAL program, and if accepted, must successfully complete the program.

This order is stayed for up to fourteen days, to establish a release plan, to make appropriate travel arrangements, and to ensure Miller's safe release. Miller shall be released as soon as a release plan is established, appropriate travel arrangements are made, and it is safe for him to travel. If more than fourteen days are needed to make appropriate travel arrangements and ensure Miller's safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

**AND IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　*[signature]*

　　　　　　　　　　　　　　　　　　　　**DAVID C. NORTON**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

**October 26, 2023**

**Charleston, South Carolina**

**Attachment:**

**In accordance with 18 U.S.C. § 3583(d), the following are mandatory conditions of supervision:**

(1) You must not commit another federal, state or local crime.

(2) You must not unlawfully possess a controlled substance.

(3) You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

(4) You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution, if applicable.

(5) You must cooperate in the collection of DNA as directed by the probation officer, if applicable.

(6) You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense, if applicable.

(7) You must participate in an approved program for domestic violence, if applicable.

**In accordance with U.S.S.G § 5D1.3(c), the following are standard conditions of supervision:**

(1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed. *This condition serves the*

*statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(4) You must answer truthfully the questions asked by your probation officer. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(5) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(6) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(7) You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(8) You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(9) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(10) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers). *This condition serves the statutory sentencing purposes of public protection. 18 U.S.C. § 3553(a)(2)(C).*

(11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court. *A confidential human source or informant is a defendant who engages in the prohibited activity of associating with persons engaged in criminal activity for the purpose of furnishing information to or acting as an agent for a law enforcement or intelligence agency. The activities required of confidential informants or human sources may potentially conflict with conditions normally imposed by a court and acting as a confidential informant or human source is generally inconsistent with the rehabilitative and re-integrative goals of supervision. Additionally, such activities may pose risks to the probation officers who supervise these individuals, especially when they have limited knowledge or no knowledge of the nature of the informant's activities.*

(12) If the probation officer determines, based on your criminal record, personal history or characteristics, that you pose a risk to another person (including an organization), the probation officer, **with the prior approval of the Court**, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk. *This*

*condition serves the statutory sentencing purposes of public protection. 18 U.S.C. § 3553(a)(2)(C).*

(13) You must follow the instructions of the probation officer related to the conditions of supervision. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*